## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA L. MACMILLAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-501-JHP-SPS |

### REPORT AND RECOMMENDATION

The claimant Teresa L. MacMillan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 18, 1964, and was fifty years old at the time of the administrative hearing (Tr. 37, 188). She completed the twelfth grade, and has worked as a shuttle bus driver (Tr. 30, 215). The claimant alleges that she has been unable to work since January 24, 2011, due to two left shoulder surgeries, whiplash, severe depression and anxiety, severe carpal tunnel, arthritis, post-traumatic stress disorder, lack of muscle strength from being in a wheelchair for a year, aches and pains in her legs, diabetes, and nausea (Tr. 214).

## Procedural History

On August 2, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Deborah Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 24, 2015 (Tr. 12-31). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform a reduced range

of light work as defined in 20 C.F.R. §§ 404.1567(b), *i. e.*, she can lift/carry/push/pull twenty pounds occasionally and ten pounds frequently and stand/walk and sit six hours in an eight-hour workday, but that she cannot operate left hand controls or do any overhead reaching with the left upper extremity, and that she could never climb ladders, ropes, or scaffolds. Additionally, she found that the claimant could understand and carry out simple instructions; must avoid high-stress, fast-paced environments; can occasionally relate to the general public, co-workers, and supervisors superficially for incidental work purposes; and that she can adapt to a routine work setting without more than occasional changes in routine (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, conveyor line bakery worker, bottling line attendant, and agricultural produce sorter (Tr. 30-31).

## Review

The claimant asserts that the ALJ erred by: (i) failing to find additional severe impairments; (ii) failing to properly assess her RFC, including the analysis of a functional capacity evaluation and treating physician opinions; and (iii) improperly identifying jobs at step five.[3] The undersigned Magistrate Judge agrees with the claimant's second contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of obesity, left shoulder impairment, degenerative disc disease, osteoarthritis, peripheral vascular

---

[3] The undersigned Magistrate Judge notes that the claimant's counsel has again failed to comply with LCvR 5.2(a) and 7.1(c) regarding format and the requirements regarding an indexed table of contents, but nevertheless proceeds on the merits of the arguments.

disease, anxiety, depression, and personality disorder, as well as the nonsevere impairments of dermatochalasis, myopia, astigmatism, and presbyopia bilaterally, and carpal tunnel syndrome (Tr. 14). On January 24, 2011, the claimant was involved in an automobile collision on the job in which she was driving a bus that was spun around and flipped (Tr. 322). She underwent a left shoulder arthroscopy in May 2011 (Tr. 493). A July 26, 2011 MRI of the cervical spine revealed mild scoliosis of the cervicothoracic spine with cervical straightening (Tr. 326). On December 7, 2011, Dr. Tyler Boone indicated that changes to the claimant's cervical spine were minimal, but that he understood she was seeing another physician regarding her left shoulder. He recommended that she avoid repetitive overhead activities (Tr. 318). She underwent a second left shoulder arthroscopy in May 2012 (Tr. 357).

On July 10, 2012, the claimant underwent a Functional Capacity Evaluation (FCE) which appeared to be a valid test, and in which she demonstrated a sedentary work level with subjective complaints of pain ranging from nine out of ten to ten out of ten (Tr. 338). However, her hand grip test was considered invalid (Tr. 339). Upon review of the FCE, Dr. David Nonweiler opined that the left shoulder demonstrated a sedentary level of activity, with occasional lifting of one to ten pounds (Tr. 335). He also completed a form regarding her restrictions in which he further indicated that she could do no lifting or carrying over ten pounds, and no repetitive lifting over ten pounds, and that he was releasing her at maximum medical improvement (Tr. 337).

On February 7, 2013, licensed psychologist Jeri Fritz, Ph.D., wrote a letter indicating that he had concerns about the claimant's ability to make progress in treatment,

-5-

that she appeared to enlarge her recollection of events including her car accident, and that he believed that she was seeking an external medical cure rather than working through her trauma (Tr. 525).

Treatment notes from the claimant's treating physician, Dr. Rick Robbins, indicate that the claimant requested pain medications and reported pain in her legs, and further requested a referral for treatment for PTSD and flashbacks in September 2013 (Tr. 552, 558, 563, 567). Other treatment notes from Dr. Robbins indicated continued complaints of pain (Tr., *e. g.*, 683), but also an impression at one time that the claimant was taking too much medication in morphine and oxycontin (Tr. 704).

On November 7, 2013, Dr. Robbins completed a treating physician mental functional assessment questionnaire, in which he treated her for anxiety and depression, with signs and symptoms including extreme anxiety with panic (Tr. 619). He then stated that she was unable to work due to back and neck pain, as well as family stress due to her husband and son's illnesses (Tr. 619). On March 11, 2014, Dr. Robbins completed a physical Medical Source Statement as to the claimant, indicating, *inter alia*, that she could sit for two hours total in an eight-hour workday, stand for one hour total, and walk for thirty minutes total, that she needed rest breaks at hourly intervals or less, and that she needed to alternate between sitting and standing at fifteen minute intervals (Tr. 661). Additionally, he limited her to occasional lifting of ten pounds or less, stated that she could rarely push/pull, and that she could never work in extended position, work above shoulder level, work overhead, or reach (Tr. 661-662). He further found she could rarely grasp/finger/manipulate with both hands, and that she could never bend, squat, crawl,

stoop, crouch, kneel, balance, or climb stairs/ladders/ramps/scaffolds (Tr. 662-663). He found she had moderate restrictions with regard to exposure to high noise levels and fine visual acuity, and marked limitations with regard to handling vibrating tools and exposure to respiratory irritants, and that she must completely avoid all other listed environmental activities (Tr. 663).

On September 24, 2013, Dr. Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of the claimant (Tr. 613). Dr. Horton found that the claimant had appropriate judgment, but poor insight, and assessed her with prominent Cluster B Personality Traits; PTSD, chronic, mild to moderate; and major depressive disorder, recurrent, mild to moderate (Tr. 615). She then opined that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks (Tr. 616). Dr. Horton also noted that while the claimant may struggle with social/emotional adjustment into new settings at times, she also struggled with the new pace set at being in the home with her ex-husband all day (Tr. 616).

The claimant continued to complain of pain, and treatment notes from Dr. Timothy Pettingell indicate that although he was only treating her for her left shoulder as part of the workman's compensation claim, she appeared to seek pain medication for multiple parts of her body (Tr. 534, 543). The claimant further complained of pain in 2014, to the point that she reported needing help to get up in the morning (Tr. 621). Treatment notes from the Roland Medical Clinic from 2013 through 2014 indicated diagnoses including chronic severe pain and decreased range of motion, chronic left

shoulder instability, chronic low back pain/degenerative disc disease/degenerative joint disease, chronic anxiety/depression, chronic Type II diabetes, chronic severe PTSD, and chronic intractable pain syndrome (Tr. 623-653).  Additionally, it was noted that pain negatively affected the claimant both physically and psychologically (Tr. 648).

  In October 2014, the claimant presented to Sequoyah Memorial Hospital with suicidal thoughts (Tr. 673).  Upon evaluation, she was diagnosed with major depression, acute on chronic anxiety, hypertension, and multiple comorbid health issues (Tr. 674). This diagnosis was done in conjunction with a person from CreOks, who agreed with the diagnosis and that the claimant did not have any true suicidal thoughts or intentional self-harm or harm to others (Tr. 674).  The claimant was instructed to follow up with CreOks for treatment (Tr. 674).

  State reviewing physicians determined that the claimant could perform light work, but that she could never climb ladders/ropes/scaffolds, and she was unable to reach overhead on the left (Tr. 71-73, 91-93).

  The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight.  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the

-8-

treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, she is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In her written opinion, the ALJ thoroughly summarized the claimant's hearing testimony as well as much of the evidence contained in the medical record (Tr. 17-30). Specifically, she extensively summarized Dr. Horton's mental status examination findings and notes and the functional capacity evaluation in the record, as well as treatment notes from Dr. Robbins, Dr. Boone, Dr. Pettingell, and Dr. Nonweiler (Tr. 18-30). She then assigned great weight to the opinions of the state reviewing physicians, but little weight to the opinions provided by Dr. Robbins, stating that he "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant," and asserting that there were good reasons for "questioning the reliability of the claimant's subjective complaints" (Tr. 29). She then stated that the claimant received increasing amount of narcotic medications and although she had numerous limitations,

the records did not support the severity alleged (Tr. 29).  The ALJ then asserted that her own analysis and RFC findings were reasonable (Tr. 30).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians.  *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).  *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).  This is of particular concern where, as here, there is a good indication that the ALJ focused on times when exams had more positive results, and appeared to dismiss without explanation, among other things, the claimant's limitation to sedentary work with permanent lifting restrictions.  20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").  *See also See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

Moreover, it is evident that the ALJ failed to properly evaluate all of the claimant's impairments in combination, of which there is a strong indication in the record

that the claimant's mental impairments directly affected her physical understanding of pain. This failure to consider all her impairments—singly and in combination—was error at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'").

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**